IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| RYAN TYLER HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-5041-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Ryan Hudson seeks judicial review of the Commissioner of Social Security's ("Commissioner") determination that he was no longer entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, including history of renal failure, kidney transplant, attention deficit disorder, and major depression, but he retained the residual functional capacity ("RFC") to perform his past relevant work as a line worker and surveillance system monitor.

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's cessation of benefits is AFFIRMED.

**Factual and Procedural Background**

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

In September 2005, the Commissioner found Plaintiff was disabled due to renal failure. Plaintiff began dialysis in September 2005 and received a kidney transplant in November 2006. Plaintiff remained on disability insurance through September 2009, at which time it was ceased

following a trial work period.  Benefits, however, were reinstated again in July 2010.  Plaintiff continued to receive benefits until January 19, 2012, when the Commissioner conducted a continuing disability review[1] and determined that Plaintiff's medical condition had improved to the point that he was no longer disabled.

Plaintiff appealed this decision to an ALJ, who affirmed the Commissioner's decision.  Plaintiff then appealed to the Appeals Council.  On appeal, Plaintiff submitted two new letters: one from his treating physician Ahmed Aboul-Magd, M.D. ("Dr. Aboul"), and another from his treating psychiatrist Willis Hoyt, D.O. ("Dr. Hoyt").  The Appeals Council denied review, finding that the new evidence did not give a sufficient basis to overturn the ALJ's decision.  This denial left the ALJ's opinion as the Commissioner's final decision.  Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

**Standard of Review**

The Court's review of a termination of disability benefits pursuant to the continuing disability review process is limited to determining whether substantial evidence on the record as a whole supports the ALJ's decision.  *Dixon v. Barnhart*, 324 F.3d 997, 1000 (8th Cir. 2003).  Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).  In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  The court must "defer heavily" to the Commissioner's findings and conclusions.  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is

---

[1] The Commissioner periodically reviews whether benefit recipients are still disabled.  *See* 20 C.F.R. § 404.1594.  This is commonly referred to as the "continuing disability review process."  *Dixon v. Barnhart*, 324 F.3d 997, 1000 (8th Cir. 2003).

not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant has medically improved to the point that he is no longer disabled, that is, that he can now perform substantial gainful activity, *see* 42 U.S.C. 423(f)(1), the Commissioner follows an eight-step sequential evaluation process.[2] *See Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008). Five of the eight steps, including formulation of the RFC, mirror the sequential process used in the initial disability determination. *Id.*

Here, Plaintiff solely challenges the RFC formulation,[3] arguing that: (1) the ALJ erred by improperly discrediting his credibility and failing to rely on medical evidence; and (2) even assuming the initial RFC determination was supported by substantial evidence, it no longer enjoys such support in light of the new evidence submitted to the Appeals Council. The Court addresses each argument in turn.

---

[2] "[T]he Commissioner must determine the following: (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 945-46 (8th Cir. 2008) (citing 20 C.F.R. § 404.1594(f)).

[3] Plaintiff also recites the standard for whether there has been medical improvement, but he fails to provide an analysis of how the ALJ's opinion fails to meet this standard. Because Plaintiff did not develop this argument, the Court will not consider it. *See Whited v. Colvin*, No. C-13-4039-MWB, 2014 WL 1571321, at *2 (N.D. Iowa April 18, 2014) (discussing how the failure to specifically object to a magistrate judge's decision is akin to making no objection at all).

3

## I. Substantial evidence supports the ALJ's RFC formulation.

### A. The ALJ thoroughly considered, and adequately refuted, Plaintiff's subjective allegations.

Citing to *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984), Plaintiff contends that the ALJ's credibility analysis was deficient because he cursorily stated, without any support or explanation, that Plaintiff's allegations were less than credible.

This is simply not true. The ALJ conducted an extraordinarily thorough credibility analysis with citation to, and analysis of, supporting record evidence. R. at 16-20. The ALJ found that Plaintiff's allegations of disabling limitations were inconsistent with his daily activities, prior statements to medical professionals, and objective medical evidence. R. at 16-20. For instance, although Plaintiff alleged that he suffered from debilitating diarrhea and required bathroom breaks every thirty to forty minutes, R. at 20, 36, 38, the medical records do not support such allegations. R. at 374, 376, 399, 499, 556, 558, 574, 589, 614, 729. In fact, the majority of records not only fail to mention such issues, they generally show that Plaintiff was doing well during many doctor visits. R. at 471, 509, 512, 517, 519, 613, 617. And although Plaintiff complained of frequent urination to medical providers, this occurred at nighttime rather than during working hours and never amounted to the level of frequency he claimed during the hearing. R. at 556, 558, 574, 589, 729.

These and the other noted inconsistencies find support in the record and supply a legally valid basis to discount Plaintiff's credibility. R. at 14, 19, 20, 36, 38-40, 47, 244, 256, 271-74, 346-51, 374, 376, 399, 499, 509, 512, 517, 519, 556, 558, 561, 574, 576, 588-89, 613, 617, 665, 729, 731, 738; *see McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (holding the ALJ may consider daily activities as one factor in the credibility analysis); *Rogers v. Astrue*, 479 F. App'x 22, 23 (8th Cir. 2012) (holding the ALJ may discount credibility in part on inconsistent

4

statements made by the claimant); *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (holding the ALJ may discount subjective complaints that conflict with medical records).

And contrary to Plaintiff's intimations, the ALJ did not solely rely on these inconsistencies in evaluating his allegations. The ALJ also noted that Plaintiff's formerly disabling kidney condition was now fairly well-controlled by medication, and he only received conservative, sporadic treatment for his mild psychological impairments. R. at 471, 477-78, 485, 504-05, 509, 512, 516-17, 591-92, 597, 613, 750. Both of these findings provide a sound basis to discredit Plaintiff's credibility. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding ALJ may consider record of conservative treatment in evaluating credibility); *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (holding ALJ may discount credibility if claimant fails to *regularly* pursue medical treatment). The ALJ also properly found that Plaintiff engaged in part-time work and sought other work during the disability period, which detracts somewhat from his credibility. R. at 35-36, 225, 474, 509, 589, 606-08, 618, 622; *see Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain.").

Considering the totality of these supported findings, substantial evidence supports the ALJ's credibility analysis.

### B. The ALJ did rely upon medical evidence in formulating the RFC.

Similarly unavailing is Plaintiff's contention that the ALJ failed to rely on any medical evidence in formulating the RFC. The ALJ's five-page RFC analysis is replete with citation to medical evidence, including treatment notes, test results, and medical opinion evidence. R. at 15-21. In fact, the ALJ analyzed and incorporated some of the limitations assessed in the opinions of Donald Wantuck, M.D., and Eduardo Ulloa, M.D. Thus, there is no merit to Plaintiff's argument.

5
Case 3:14-cv-05041-DGK   Document 12   Filed 02/04/15   Page 5 of 9

## II. Even considering the letters from Plaintiff's treating physicians, substantial evidence supports the ALJ's determination.

Plaintiff next claims that once the Court considers evidence submitted to the Appeals Council, the ALJ's RFC formulation is no longer supported by substantial evidence. In particular, the ALJ claims that letters from Dr. Aboul and Dr. Hoyt undermine many of the ALJ's findings, thus throwing the RFC into question.

Dr. Aboul, who treated Plaintiff's kidney condition for several years prior to and after the transplant, opined that Plaintiff's immunosuppressant medication caused him to have severe diarrhea. R. at 770. Dr. Aboul alleged that this issue required Plaintiff to take frequent bathroom breaks, thus causing former employers to fire him. R. at 770. Dr. Aboul concluded that this side effect would continue to prevent Plaintiff from working in the future. R. at 770. Dr. Hoyt, who provided mental health treatment to Plaintiff over several years, wrote a letter stating that he may have been mistaken when he frequently documented Plaintiff's ability to bench press 405 pounds. R. at 768. Plaintiff submitted both letters to the Appeals Council, but it denied review, finding that this evidence "did not provide a basis for changing the [ALJ's] decision." R. at 2.

When the Appeals Council denies review despite new and material evidence, the Court must determine whether in light of the new evidence the ALJ's decision is still supported by substantial evidence on the record as a whole. *See Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012). "To be 'new,' evidence must be more than merely cumulative of other evidence in the record." *Id.* (quoting *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000)). "Evidence is 'material' if it is 'relevant to claimant's condition for the time period for which benefits were denied.'" *Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) (quoting *Bergmann*, 207 F.3d at 1069).

Here, even assuming that these letters qualify as "new, material" evidence, they do not supply a sufficient basis to set aside the ALJ's decision. With respect to Dr. Hoyt's letter, it is nothing more than a minor correction to his treatment notes. On several occasions after Plaintiff's transplant, Dr. Hoyt documented that Plaintiff bench pressed between 330 and 425 pounds, which the ALJ cited in his decision. R. at 18, 558, 561, 574, 576, 661, 666, 721, 735, 739, 768. But even assuming these were misstatements, this revelation does not undermine the ALJ's ultimate disability determination. Although the ALJ relied on these notes for credibility purposes, Plaintiff's weight lifting was only *one* of the many inconsistencies, as noted above, that supported the ALJ's credibility analysis. Even taking away this evidence, there still remains sufficient evidence supporting the ALJ's credibility determination and his disability decision as a whole. Thus, the Court cannot conclude that Dr. Hoyt's letter would alter the ALJ's conclusion.

Similarly, Dr. Aboul's letter, although more probative than Dr. Hoyt's, also fails to supply a sufficient basis to overturn the ALJ's decision. Plaintiff's argument is premised on the assumption that Dr. Aboul's letter, as an opinion from a treating physician, is entitled to substantial, if not controlling, weight. But that is not the case. To be entitled to such deference, Dr. Aboul's opinion must be well supported by, and not inconsistent with, other substantial evidence in the record. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing 20 C.F.R § 404.1527(c)(2)). Moreover, it must not be inconsistent with, or unsupported by, the physician's own treatment notes. *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). Dr. Aboul's opinion does not satisfy either of these standards.

Dr. Aboul opines that Plaintiff's immunosuppressant medication causes frequent bathroom breaks, mostly arising from bouts of diarrhea. R. at 770. The record as a whole, however, belies this assertion. Admittedly, Plaintiff has consistently asserted throughout the disability process that he frequently uses the restroom due to his transplant and attendant

medication.  But such allegations are not borne out by the treatment notes from numerous medical providers.  While there are some notes that Plaintiff dealt with quite serious diarrhea at times, R. at 477, 499, the frequency and seriousness of these episodes decreased over time.  R. at 471-499.  For instance, treatment notes from Plaintiff's periodic checkups at the Mayo Clinic show that although he suffered from serious diarrhea in 2009, he subsequently suffered only mild diarrhea that was alleviated with over-the-counter medications such as Imodium.  R. at 471-499.  Treatment notes from other medical providers show that in August 2012 Plaintiff was not exhibiting any stomach problems, let alone serious ones.  R. at 709.  If Plaintiff's issues were as frequent and disabling as Dr. Aboul's letter suggests, then one would expect to find more observations in the record demonstrating such.

Dr. Aboul's opinion is also arguably inconsistent with, or unsupported by, his treatment notes.  When read as a whole, Dr. Aboul's notes following Plaintiff's transplant are not indicative of frequent, severe stomach problems.  R. at 605-625, 717-19.  For the most part, they contain findings about Plaintiff's mental condition, and even show that Plaintiff was "feeling well" during some visits.  R. at 605-625.  On two visits, however, Plaintiff did complain of "loose stools," "stomach upset," and "diarrhea."  R. at 677, 717.  During both sessions, Dr. Aboul simply advised Plaintiff to take Imodium and increase fluid intake.  R. at 677, 717.  Granted, these notes corroborate the existence of diarrhea, but the lack of extensive documentation undermines Dr. Aboul's conclusion that it is disabling.  Given this lack of consistency and support, Dr. Aboul's opinion is readily discountable.  *See Perks*, 687 F.3d at 1093.

Dr. Aboul's opinion would also not impact the outcome for several other reasons.  First, besides using the vague term "frequently," it does not specify how often Plaintiff experiences disabling stomach problems.  R. at 770.  Opinions that lack specificity on crucial issues are of

8

little value. *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010). Second, and more importantly, Dr. Aboul's opinion, including the reasons for Plaintiff's prior terminations, seems to be primarily based on subjective complaints. R. at 770. Such reliance is troublesome given the fact that the ALJ found Plaintiff's allegations less than credible. *See Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (holding ALJ properly discounted treating physician's opinion for overreliance on claimant's subjective complaints). For all of these reasons, Dr. Aboul's opinion is not entitled to controlling, or even significant, weight. Therefore, the Court cannot conclude that it deprives the ALJ's decision of substantial record support.

Because neither doctor's opinion would alter the outcome, the Court finds that their submission to the Appeals Council does not require remand.

**Conclusion**

Since substantial evidence on the record as a whole supports the ALJ's decision, the Commissioner's cessation of benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  February 4, 2015   /s/ Greg Kays
                          GREG KAYS, CHIEF JUDGE
                          UNITED STATES DISTRICT COURT

9